IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMIPRE SYLVA,<br><br>                Plaintiff,<br><br>-against-<br><br>JACKSON UDE,<br><br>                Defendant. | Case No.: 5:21-cv-04102<br><br><br>**COMPLAINT** |

Plaintiff Timipre Sylva ("Mr. Sylva"), through his undersigned attorneys, as and for his Complaint against Defendant Jackson Ude ("Defendant") alleges as follows:

## STATEMENT OF CASE

1. Mr. Sylva brings this action for damages and corrective and injunctive relief due to Defendant's blatant acts of defamation that wrongfully accuses Mr. Sylva of, *inter alia*, professional misconduct, including taking bribes and engaging in fraud, in his capacity as a Nigerian civil servant whose work includes ensuring the sustainable development of oil and gas resources in the country.

2. Defendant's wrongful publications of the defamatory statements, which portray Mr. Sylva as a corrupt and disloyal public servant, have severely harmed and continue to harm Mr. Sylva, who has been contacted by several of his colleagues and family members, among others, expressing shock and outrage toward Mr. Sylva due to the defamatory statements.

3. Despite having knowledge of the falsity of the defamatory statements – and the damage they were causing Mr. Sylva – Defendant still, to date, has refused to acknowledge the wrongfulness of his conduct or take down the defamatory statements.

4. Mr. Sylva thus brings this action for, *inter alia*, damages and to force Defendant to delete and retract the defamatory statements.

## PARTIES

5. Mr. Sylva is an individual residing in Nigeria.

6. Upon information and belief, Defendant is an individual residing in Reading, Pennsylvania. A former resident of Nigeria, Defendant is a naturalized citizen of the United States.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

8. This Court has personal jurisdiction over Defendant since Defendant resides and transacts business in Pennsylvania

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1).

## FACTS RELEVANT TO ALL CLAIMS

**Background**

10. Mr. Sylva is a Nigerian public servant currently serving as the Minister of State for Petroleum Resources, a position he has held since 2019. Before his appointment, he was the former Governor of Bayelsa State, Nigeria.

11. Mr. Sylva holds a Bachelor's degree in English from the University of Port Harcourt in Nigeria, a Doctorate degree in International Relations from the UBIS University in Switzerland, and a second Doctorate degree in Public Administration from the Africa Institute For Public Administration in Nigeria.

12. Mr. Sylva's career in public service started in 1992 when he was first elected to a seat in the House of Assembly representing Brass constituency in old Rivers State, Nigeria. He was later appointed as the Special Assistant to the Minister of State for Petroleum in 2004. He served that position for two years, and then resigned to join the Peoples Democratic Party (PDP) gubernatorial primaries in 2006 in Bayelsa State, Nigeria. In 2008, following a challenged victory in the 2007 election, Mr. Sylva again won the Bayelsa State gubernatorial election as a candidate of the PDP, serving until 2012. In 2019, Mr. Sylva was appointed by President Muhammadu Buhari as the Nigeria Cabinet Minister of State for Petroleum Resources.

13. Defendant is a blogger, and upon information and belief, Defendant is the founder and owner of the domain name and website at pointblanknews.com ("Pointblank News"), which is a self-proclaimed Nigerian news platform.

14. Defendant states that Pointblank News sets out to "promote developmental Journalism and create an enabling environment for people to be able to interact, share opinions and proffer solutions to the many political, social and economic problems facing Nigeria and Africa at large."

15. In reality, Defendant is a serial defamer who profits by peddling in "fake news." Defendant serves as writer, editor and publisher of Pointblank News. As such, Defendant does not follow commonly acceptable journalistic standards. For instance, Defendant does not engage in a pre-publication investigation or an editorial review process performed by established media outlets.

16. In recent years, Pointblank News has been ordered by several Nigerian courts to restrain publication of false reports and found liable for at least 100 million Nigerian Naira (approximately $263,000) in damages stemming from defamatory articles. Defendant has

flagrantly disregarded the numerous court judgments against him and continues to profit off of his fake news.

17. Upon information and belief, Defendant is regularly hired by individuals in Nigeria who wish to publish defamatory articles on business or political rivals on a platform that is well-read by Nigerians, and thus Defendant publishes their defamatory hit pieces on Pointblank News.

18. At the same time, Defendant uses his position as a publisher to extort large financial payouts from the subjects of his articles. As recently as September 7, 2021, Defendant, through his agent, has demanded a multi-million dollar payment from the subject of one of his prior defamatory articles.

19. Upon information and belief, Defendant directs Pointblank News to an audience based overwhelmingly in Nigeria. All, or nearly all, of Defendants' readers are in Nigeria. All, or nearly all, of the advertisers on Defendants' platform are for Nigerian-based businesses. The articles posted on the Website are exclusively about Nigeria.

20. Defendant claims that Pointblank News enjoys "minimum half a million page views from fifty thousand unique visitors daily."

**Defendant Publishes Defamatory Statements about Mr. Sylva**

21. On or about September 15, 2020, Defendant caused an article to be published on Pointblank News entitled "SYLVA, DICKSON, YAHAYA BELLO, GANDUJE, INEC RECS, BANNED FROM THE U.S" ("Defamatory Article #1").

22. Defamatory Article #1 accuses Mr. Sylva of professional misconduct by manipulating the state governorship elections in Nigeria, causing election violence, and paying or accepting bribes.

23. Specifically, Defamatory Article #1 contains the false statement about Mr. Sylva that "Two former Governors of Bayelsa State, Timipre Sylva and Seriaki Dickson alongside Governors Yahaya Bello of KogiState and Abdullahi Umar Ganduje of Kano State are the latest to be banned from entering the United States[.]"

24. Defamatory Article #1 also provides that "A senior U.S official who confirmed the names [of the individuals banned from the U.S.] told Pointblanknews.com that the U.S is determined to help Nigeria grow and sustain its democratic practice and as such anyone linked to election violence, election manipulation, and bribery, would not be spared from the ban."

25. The above statements are knowingly and materially false.

26. Mr. Sylva has never impinged on the democratic process in Nigeria, nor has he participated in any election violence, election manipulation, or bribery.

27. Mr. Sylva is not banned from entering the United States and has never been banned from entering the United States.

28. Mr. Sylva has never been informed by the U.S. government or any of its agencies about a ban to enter the United States.

29. Mr. Sylva did not violate any Nigerian laws or any duties he owed as a former Governor in Nigeria.

30. Following Defamatory Article #1, Defendant continued to publish a series of defamatory articles in 2021 on Pointblank News that fabricate false stories alleging Mr. Sylva's professional misconduct.

31. On or about February 10, 2021, Defendant caused an article to be published on Pointblank News entitled: "PETROLEUM MINISTER, SYLVA, IN $25 MILLION BONNY

NLNG BRIBERY SCANDAL… WABOTE ALSO FINGERED WITH $2MILLION BRIBE" ("Defamatory Article #2").

32. Defamatory Article #2 attacks and accuses Mr. Sylva (as well as non-party Simbi Wabote) of taking illegal bribes and kickbacks and otherwise engaging in fraud in connection with the work of a subcontractor on a local project.

33. Specifically, Defamatory Article #2 contains the following false and defamatory statements made about Mr. Sylva:

   i. "Minister of State Petroleum, Timipre Sylva allegedly collected $25million in kickbacks to influence the choice of Saipem, an Italian company in the $12billion Bonny NLNG Train 7 contract."

   ii. "Sylva allegedly was able to convince the Saipem Executives to path with the huge sums so he can share with some unnamed persons in the presidency so they can be named the preferred bidder."

   iii. "Sylva also negotiated a separate $100million in guaranteed contract for himself, using a front as a sub-contractor from the $4billion Train 7 Contract."

   iv. "[A]s soon as Wabote who heads the Local Content Board heard about the kickbacks to Sylva, he devised his own means, fired a letter to Saipem in October 2020, raising concern over noncompliance to Local Content Laws."

34. The above statements are knowingly and materially false.

35. Mr. Sylva has never participated in any fraud, bribery, or kickback scheme.

36. Mr. Sylva did not scheme to personally profit from the above-mentioned government contracts.


37. In fact, the contracts referred to in Defamatory Article #2 had already been awarded before Mr. Sylva assumed office, and such information would have been readily available to Defendant at the time he published Defamatory Article #2.

38. After being informed by counsel for Wabote that the allegations in Defamatory Article #2 were untrue, Defendant republished the article with even more outrageous and false alleged figures.

39. On or about May 4, 2021, Defendant published an article on Pointblank News entitled "HOW SYLVA, MAMMAN DAURA, FORGED BUHARI'S APPROVAL, BLACKMAILED DPRTO AWARD OIL BLOCS TO EMEKA OFFOR" ("Defamatory Article #3").

40. Defamatory Article #3 attacks and accuses Mr. Sylva of forging Nigerian President Muhammadu Buhari's approval to revoke several oil licenses belonging to a foreign oil company and award the licenses to companies that he owned.

41. Specifically, Defamatory Article #3 contains the following false and defamatory statements made about Mr. Sylva:

   i. "The minister of State Petroleum, Timipre Sylva and Mamman Daura, an uncle to president Mohammadu Buhari, connived and forged the President's approval to revoke four oil licenses belonging to Addax Petroleum, a Chinese-owned oil company, according to new information obtained by Pointblanknews.com."

   ii. "[T]he trio of Sylva, Daura and Offor had met and worked out a strategy to snatch the oil licenses from Addax."

    iii.    "Part of the plot according to an insider at the Ministry of Petroleum was to use Daura to inform the DRP [Department of Petroleum Resources] Director Auwalu of Buhari's approval to revoke Addax licenses."

    iv.    "The DPR awarded the blocks to Kaztec Engineering and Salvic Petroleum Resources. Both companies are owned by Offor and fronts for Daura and Sylva[.]"

    v.    "'They went bullied and blackmailed the DPR Director, took away Addax four licenses. When the President was confronted with it by the Chinese, he was shocked. He immediately demanded they reversed the decision,' a Presidency source told Pointblanknews.com."

    vi.    "Sources told pointblanknews.com that the duo of Sylva and Daura have often connived, forged or used the President's name to loot the oil industry. The source mentioned the recently concluded sales of marginal eld licenses."

42.    The above statements are knowingly and materially false.

43.    Mr. Sylva has never defrauded any government officers nor any entities regarding the revocation of the oil licenses referred to in Defamatory Article #3.

44.    Mr. Sylva has never had any meeting with Mr. Daura and Mr. Offor to steal any oil licenses from Addax Petroleum.

45.    Mr. Sylva has no interests and links to any of the two companies mentioned in Defamatory Article #3, Kaztec Engineering and Salvic Petroleum Resources. Information as to the ownership of the two companies was readily available to Defendant when he published Defamatory Article #3.

46. On or around May 27, 2021, Defendant published an article on Pointblank News entitled "FRAUD: HOW SYLVA, DPR DIRECTOR AUWALU CORNERED $2.8MILLION FROM MARGINAL FIELD BID ROUND ("Defamatory Article #4").

47. Defamatory Article #4 attacks and accuses Mr. Sylva of embezzling money from bids for government contracts.

48. Specifically, Defamatory Article #4 contains the following false and defamatory statements made about Mr. Sylva:

   i. "Minister of state Petroleum, Timipre Sylva and the Department of Petroleum Resources (DPR) Director Sarki Auwalu are presently telling the Economic and Financial Crimes Commission, EFCC all they know about how a princely sum of $2.8million was traced into accounts belonging to one of its consultants and proxy, money believed to be proceeds from the bid of 57 marginal field."

   ii. "Pointblanknews.com investigation revealed that the minister and the DPR Director, Auwalu hired Abiodun Adesanya of Degeconek Nig Ltd, used him to steal $2.8million during the 57 marginal el d bid round. Degeconek was hired as a consultant for the 57 marginal eld bid round by NDR."

   iii. "The honorable minister has been enmeshed in several dirty deals in the oil sector in the last two years since his appointment by President Muhammadu Buhari."

49. The above statements are knowingly and materially false.

50. Mr. Sylva has never engaged in any fraudulent conduct when he served the position of the Minister of State for Petroleum Resources.

51. Mr. Sylva does not have any relationship with Degeconek Nig Ltd.

52. Mr. Sylva has never been under any investigation with the EFCC with regards to the alleged embezzlement.

53. Mr. Sylva has never received, nor has he obtained any profits in other ways from the alleged $2.8 million from the above-mentioned bids.

54. On or around June 22, 2021, Defendant published an article on Pointblank News entitled "EXPOSED: DICKSON, SYLVA IN AN UNHOLY ALLIANCE TO STRIP BAYELSA OVER N1TRILLION WORTH STATE OIL FIELD OML 46" ("Defamatory Article #5").

55. Defamatory Article #5 attacks and accuses Mr. Sylva of scheming with a non-party, Seriake Dickson, the previous governor of Bayelsa State, Nigeria, to convert a state-owned oil well into the possession of Dickson's private company.

56. Specifically, Defamatory Article #5 contains the following false and defamatory statements made about Mr. Sylva:

   i. "The immediate past governor of Bayelsa State, Seriake Dickson and his predecessor in office Timipre Sylva have put their political differences aside for the purpose of stripping Bayelsa State the only oil well, the Atala Marginal Field OML 46 worth over one trillion naira [approximately $2.4 billion]."

   ii. "But because of the ulterior motive and hidden agenda of then Governor Henry Seriake Dickson, he deliberately refused to renew the Operating License of the Atala Marginal Field. He allowed the license to expire."

   iii. "Based on the above development, the Department of Petroleum Resources (DPR) formally announced on April 6, 2020 the Revocation of the Marginal Oilfield License it issued to Atala Oil Field."

    iv.    "To many Bayelsans and other stakeholders, the revocation was blamed on the political differences between Dickson and Sylva. But nobody was ready for the shocking exposee as the two ex governors are actually in sync as to strip the state of the oil well."

57.    The above statements are knowingly and materially false.

58.    Mr. Sylva did not work with Mr. Dickson in the alleged fraudulent manner to extort from the state-owned oil well, Atala Marginal Field.

59.    Mr. Sylva has never participated in any scheme to interfere with the operation and administration of Atala Marginal Field.

60.    On or around July 6, 2021, Defendant published an article on Pointblank News entitled "SCANDAL: HOW SYLVA BRIBED NASS MEMBERS WITH $10,000 EACH TOOVERTURN PIB" ("Defamatory Article #6").

61.    Defamatory Article #6 attacks and accuses Mr. Sylva of bribing the National Assembly of Nigeria to circumvent the legislative process required for a piece of oil industry-related legislation.

62.    Specifically, Defamatory Article #6 contains the following false and defamatory statements made about Mr. Sylva:

    i.    "A sum of Ten Thousand United States Dollars bribe paid to each member of the National Assembly by the Minister of State for Petroleum Resources, Timipre Sylva was all it took to break the 13 years legislative jinx of passing the Petroleum Industry Bill (PIB) [.]"

    ii.    "Chairman of the Senate Joint Committee on Petroleum Upstream/Downstream and Gas, Senator Sabo Nakudu, had earlier while presenting its committee's

11

|  |  |
|---|---|
|  | report before the Senate went into a closed-door session with the Minister of State for Petroleum Resources, Mr. Timipre Sylva, and the Group Managing Director of the Nigerian National Petroleum Corporation (NNPC), Malam Mele Kyari." |
| iii. | "Pointblanknews.com investigation has revealed that Sylva and Kyari played the ball as suggested by the leadership of both chambers of the National Assembly so as to lobby the lawmakers and to circumvent the processes needed for the passage." |
| iv. | "According to the source, 'while every members of the House of Representatives and the Senate received $10,000 each, the Committee on Petroleum Upstream/Downstream and Gas members as well as the NASS leadership were rewarded with between $13,000 and $15,000 each.'" |
| v. | "Another source who denounced the outcome of the exercise wondered why Sylva would supervise the shortchanging of his South South [sic] zone by bribing lawmakers to vote for the reduction of the entitlement for the oil producing zone from 5 percent to 3 percent." |
| vi. | "'It is clear that the Minister is working for the North against the interest of the Niger Delta region. He has sold out. Even the Southern Senators' efforts to get more for the oil producing people were effectively blocked by Sylva and the Senate President. If he had insisted on the 5 percent as agreed by the House of Representatives, the uproar in the Niger Delta region wouldn't be this much.'" |
| 63. | The above statements are knowingly and materially false. |
| 64. | Mr. Sylva has never participated in any forms of bribery. |

65. Mr. Sylva has never engaged in any forms of interference of the legislative process in Nigeria.

66. On or around August 23, 2021, Defendant published an article on Pointblank News entitled "$2MILLION DEPOSIT IN TIMIPRE SYLVA BANK ACCOUNT IN ONE TRANSACTIONSYLVLINKED TO FRAUD – INVESTIGATORS" ("Defamatory Article #7").

67. Defamatory Article #7 attacks and accuses Mr. Sylva of receiving a bribe into his personal bank account.

68. Specifically, Defamatory Article #7 contains the following false and defamatory statements made about Mr. Sylva:

  i. "Wide net international investigations into the activities of politically exposed persons (PEPs) in Nigeria and other flagged African countries have found a curious lodgement of $2,039,975 (Two million and thirty-nine thousand, nine hundred and seventy-five US dollars) into one of the accounts of Nigeria's Minister of State for Petroleum, Timipre Marlin Sylva."

  ii. "Investigators are suspecting the money to be slush fund. Working on the premise that Sylva does not own a thriving private business, the investigators are suspecting the money to be proceed of crime or an outright bribe to a man whose immediate past was spent in the Nigerian public service. He was governor of Bayelsa State (May 29, 2007, 2008 –January 27, 2012), a Special Assistant to ex-Minister of State for Petroleum Edmund Dakouru (2004 to 2007)."

  iii. "The money was lodged in the Access Bank account (Account number: 0047560618) of Sylva on May 10, 2019 by Moni Pulo Limited, a company

registered with the Corporate affairs Commission, CAC ( RC – 183333)  on January 3, 1992 with address listed at 17 Liberation Drive , P/Harcourt ,Rivers State."

69. The above statements are knowingly and materially false.

70. Mr. Sylva has never received any amount, regardless of the alleged amount, to his account from Moni Pulo Limited.

71. Mr. Sylva has never received any bribes during his service in the position of the Minister of State for Petroleum Resources.

72. No reputable mainstream newspaper or blog reported on Mr. Sylva engaging in any of the acts of fraud or professional misconduct described in Defamatory Articles #1 to #7.

73. None of Defendant's Defamatory Articles #1 to #7 identify a source of the information that Defendant allegedly received as to claims of Mr. Sylva's fraud or professional misconduct.

74. None of Defendant's Defamatory Articles #1 to #7 indicate that Defendant took any specific steps to independently verify any of the claims that Mr. Sylva engaged in fraud or professional misconduct.

75. Before, during, and after publishing Defamatory Articles #1 to #7, Defendant has consistently and openly shown his ill will, spite, and hostility towards Mr. Sylva by using unusually charged language, including "ENEMIES OF STATE," "OIL THIEVES," and "CROOKS."

76. Defendant's Defamatory Articles #1 to #7 contain false allegations that are so inherently improbable and involve such vast amounts of money that only a reckless person would have put them into circulation.

77. Other than publishing the above articles on Pointblank News, Defendant also used Twitter to further defame Mr. Sylva. As discussed with details below, Defendant republished the Defamatory Articles on Twitter within a day or two after the articles' first publication on Pointblank News.

78. On or around September 15, 2020, Defendant tweeted the images of Mr. Sylva and a non-party, Mr. Dickson, captioned "ENEMIES OF STATE: Former Governors Timipre Sylva and Seriaki Dickson of Bayelsa State banned from the U.S" ("Defamatory Twitter Post #1"). This tweet recited the false statements made in the Defamatory Article #1.

79. Later on the same day, Defendant republished Defamatory Article #1 on Twitter, further publicizing the article and the defamatory statements made therein ("Defamatory Twitter Post #2").

80. On or around February 10, 2021, Defendant republished Defamatory Article #2 on Twitter, further publicizing the article and the defamatory statements made therein ("Defamatory Twitter Post #3").

81. Shortly after, on February 13, 2021, Defendant posted a follow-up tweet captioned "Fraud upon Fraud. You loot from Govt to sustain you [sic] life, loot from Govt to sue those who expose you. Why don't you resign first and then sue. At least we start from you Asset Declaration forms to how much you pay Sylva to all other bribes. Simbi Wabote is not serious!" ("Defamatory Twitter Post #4").

82. Defamatory Twitter Post #4 is knowingly and materially false. Mr. Sylva did not receive any bribes from Mr. Wabote.

83. On or around May 3, 2021, Defendant republished the Defamatory Article #3 on Twitter, further publicizing the article and the defamatory statements made therein (the "Defamatory Twitter Post #5").

84. Later on the same day, Defendant posted Mr. Sylva's image, along with the images of other public officers mentioned in the Defamatory Article #3, and captioned "OIL THIEVES! Timipre Sylva, Buhari's uncle, Mamman Daura and Emeka Ofor [sic], forged Buhari's approval, blackmailed DPR to revoke four mining licenses belonging to Addax Petroleum a Chinese owned. The Chinese cried to Buhari, PMB said he was not aware, he reversed the revocation." ("Defamatory Twitter Post #6"). This tweet recited the false statements made in the Defamatory Article #3.

85. Shortly after, on May 6, 2021, Defendant posted another tweet alleging that "Timipre Sylva denied Itsekiri community Oloye Marginal oil field in Itsekiri land after they had paid over $100k. He took same and gave to AA Rano, a front for Sabiu Yusuf, aka Tunde, Buhari's PA. He now gave Hajia Yusuf Bichi Magaji, wife of DG DSS a $7million contract in NPDC." ("Defamatory Twitter Post #7").

86. Defamatory Twitter Post #7 is knowingly and materially false. Mr. Sylva did not corruptly award the government contract to parties that have personal connections with him.

87. On or around May 26, 2020, Defendant posted Mr. Sylva's image and captioned "THE OIL CROOKS: Minister of state Petroleum, Timipre Sylva, DPR Director Sarki Auwalu hired Abiodun Adesanya of Degeconek Nig Ltd, used him to steal $2.8million during the 57 marginal field bid round. Degeconek was hired as a consultant for the 57 marginal field bid round by NDR." ("Defamatory Twitter Post #8"). This tweet recited the false statements made in the Defamatory Article #4.

88. Shortly after, on May 31, 2021, Defendant continued to accuse Mr. Sylva of embezzlement by posting on Twitter that "Auwalu, Sylva stole $28M Royalty. The Director Dept of Petroleum Res, DPR and the Minister of state for Petroleum Resources connived and reduced the Royalty payments of Amni oil from 18.5% to 2.5%, collected $16million and paid FG a paltry $2million and pocketed the rest in 2020." ("Defamatory Twitter Post #9").

89. The Defamatory Twitter Post #9 is knowingly and materially false. Mr. Sylva did not embezzle any monies when he served as the Minister of State for Petroleum Resources.

90. On or around June 24, 2021, Defendant republished the Defamatory Article #5 on Twitter, further publicizing the article and the defamatory statements made therein ("Defamatory Twitter Post #10").

91. On or around July 6, 2021, Defendant posted Mr. Sylva's image and captioned "Minister of State, Petroleum, Timipre Sylva, mortgaged and shortchanged Niger Delta people after he shared $10k to each member of the National Assembly to pass the PIB Bill. Senator Albert Bassey, Rep Victor Nwaokolo coordinated the bribe for both Senate and House. #PIB" ("Defamatory Twitter Post #11"). This tweet recited the false statements made in the Defamatory Article #6.

92. Later on the same day, Defendant republished Defamatory Article #6 on Twitter, further publicizing the article and the defamatory statements made therein ("Defamatory Twitter Post #12").

93. On or around August 22, 2021, Defendant republished Defamatory Article #7 on Twitter, further publicizing the article and the defamatory statements made therein ("Defamatory Twitter Post #13").

## FIRST CLAIM FOR RELIEF

### Defamation per se

94. Mr. Sylva repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

95. Defendant intentionally made false statements of fact about Mr. Sylva within all the Defamatory Articles from #1 to #7 and all the Defamatory Twitter Posts from #1 to #13.

96. The statements were made maliciously and willfully in an attempt to discredit Mr. Sylva and to portray Mr. Sylva as a corrupt and disloyal public servant.

97. The statements were intended to and did cause harm to Mr. Sylva's business and professional integrity and reputation.

98. The statements were made with reckless disregard for their truth and/or with knowledge of their falsity, and with wanton and willful disregard of the reputation and rights of Mr. Sylva.

99. The statements were made of and concerning Mr. Sylva and were so understood by those who read Defendant's publication of them.

100. Defendant has no privilege to assert the false and disparaging statements.

101. As a direct and proximate result of Defendant's unlawful, deliberate, and malicious conduct as set forth above, Mr. Sylva has been, and will continue to be, damaged both irreparably and monetarily.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the acts and circumstances alleged herein, Mr. Sylva seeks relief from this Court as follows:

a. Judgment on the claim set forth above;

b. An award of compensatory damages according to proof at trial, but in an amount no less than ten million dollars ($10,000,000), as well as punitive and exemplary damages where authorized;

c. An order enjoining Defendant and those in active concert with Defendant from publishing any further defamatory statements concerning Mr. Sylva;

d. An order directing Defendant to delete and remove all the Defamatory Articles from #1 to #7, all the Defamatory Twitter Posts from #1 to #13, and any publications of the defamatory statements;

e. An order directing Defendant to undertake such remedial efforts as the Court deems necessary to restore Mr. Sylva's reputation;

f. Prejudgment and post-judgment interest at the applicable rate;

g. An award for reasonable attorney's fees, costs and disbursements, where applicable; and

h. Such other and further relief the Court deems proper and just.

## DEMAND FOR TRIAL BY JURY

Please take notice that Mr. Sylva hereby demands trial by jury for all issues so triable.

Respectfully Submitted:

**WOLF BALDWIN & ASSOCIATES PC**

/s/ Joshua D. Macel
Joshua D. Macel
PA Attorney ID No. 310507
800 E. High Street
Pottstown PA 19464
jmacel@wolfbaldwin.com

**LEWIS & LIN, LLC**

/s/ David D. Lin
David D. Lin, Esq. (*pro hac vice forthcoming*)
Michael D. Cilento, Esq. (*pro hac vice forthcoming*)
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiff Timipre Sylva*